1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11   PAUL DENHAM,                      )   Civil No. 09-1505-JLS(WVG)
                                       )
12                   Plaintiff,        )   REPORT AND RECOMMENDATION
                                       )   GRANTING DEFENDANTS' MOTION
13   v.                                )   TO DISMISS
                                       )
14   CORRECTIONAL OFFICER ARANDA,      )   (Doc. # 16)
     et al.,                           )
15                                     )
                     Defendants.       )
16                                     )
                                       )
17   _____ )

18          On July 10, 2009, Paul Denham (hereafter "Plaintiff"), an

19   inmate proceeding *pro se* and *in forma pauperis*, filed a Complaint

20   pursuant to 42 U.S.C. § 1983 (hereafter "Complaint") claiming that

21   his civil rights were violated in August 2007, when he was housed at

22   the Richard J. Donovan Correctional Facility (hereafter "RJD"). He

23   sues all Defendants in their official and individual capacities, and

24   seeks compensatory damages, punitive damages and reimbursement of

25   the costs he incurred in pursuing this litigation.  Defendants have

26   filed a Motion to Dismiss the Complaint (hereafter "Motion").

27   Plaintiff has filed an Opposition to the Motion.  Defendants have

28   filed a Reply to Defendants' Opposition. Plaintiff has filed a

1   Surreply. The Court, having reviewed the Complaint, Opposition,

2   Reply, Surreply, the exhibits attached thereto, and GOOD CAUSE

3   APPEARING, HEREBY RECOMMENDS that Defendants' Motion to Dismiss be

4   GRANTED.

5                                    I

6                          FACTUAL ALLEGATIONS

7       Plaintiff sues the following Defendants: Correctional Officer

8   Aranda (hereafter "Aranda"); Nurse Benvin (hereafter "Benvin");

9   Captain Marrero (hereafter "Marrero"); E.A. Contreras (hereafter

10  "Contreras"); Silvia Garcia (hereafter "Garcia"); P. Cortez

11  (hereafter "Cortez"); Mr. Hernandez, Director of Corrections

12  (hereafter "Hernandez"); Matthew Cate, Secretary of the California

13  Department of Correction and Rehabilitation (hereafter "Cate")[1]; and

14  Mr. K. Smith (hereafter "Smith").[2]

15      Plaintiff is an inmate at Salinas Valley State Prison.  He

16  alleges that while he was incarcerated at RJD, he worked at the

17  prison medical clinic where he became aware of misconduct of inmates

18  and staff. Specifically, Plaintiff alleges that inmate Barno

19  (hereafter "Barno") committed wrong doings while Barno was assigned

20  to work at the clinic. Plaintiff confidentially provided the

21  information regarding the misconduct to Correctional Officer Diaz.

22  (Complaint at 4).

23      On August 8, 2007, Plaintiff was questioned by a Correctional

24  Officer, (who Plaintiff identifies as "J. Doe," to protect his

25  identity, hereafter "Doe").  Doe told Plaintiff that he (Doe) feared

26

27  _____

    [1]    Cate filed a Joinder to Defendants' Motion.

28  [2]    The Court notes that Defendants' Motion is not brought on behalf of
           Garcia, Aranda and Benvin, who have not been served in this action.

                                     2
                                                            09cv1505

physical harm should Aranda[1/] discover his identity and that Aranda has the reputation for violence. Doe's identity was known to Sgt. Strickland (hereafter "Strickland") and Lt. Garza (hereafter "Garza"). Plaintiff described Barno's wrong doings to Doe and that Benvin was providing things to inmates that she was not supposed to provide. Plaintiff further alleged that Benvin could be a source of syringes for inmates, and that she was having an affair with Aranda. (Complaint at 4).

On August 12, 2007, Barno questioned and threatened Plaintiff. Barno told Plaintiff that Benvin said Plaintiff provided confidential information to prison authorities to get Barno fired and, further that Benvin planned to retaliate against Plaintiff by falsely accusing Plaintiff of threatening her. Plaintiff denied that he was the confidential informant, and said that Benvin was trying to have him assaulted because she accused Plaintiff of being the confidential informant. Plaintiff told Barno to report the foregoing to the Office of Internal Affairs. (Complaint at 4).

On August 14, 2007, Plaintiff sent a written statement to Doe that described the information provided to him by Barno. On August 15, 2007, Doe informed Plaintiff that he (Doe) had made copies of the written statement and forwarded the original statement to Sgt. Bravado in the Office of Internal Affairs. (Complaint at 5).

On September 4, 2007, Benvin informed the authorities at RJD that Plaintiff had threatened her. The threat was contained in two notes. (Complaint at 5).

---

[1/]     Plaintiff alleges that Aranda was having an affair with Benvin. Benvin worked at the prison medical clinic.

09cv1505

 1        Thereafter, Strickland told Plaintiff that he was ordered to
 2   move to Administrative Segregation (hereafter "Ad Seg") because he
 3   was accused of threatening staff.  Plaintiff told Strickland about
 4   his allegations regarding Barno and Benvin.  Strickland, and later
 5   Garza, concluded that there was no reason to put Plaintiff in Ad
 6   Seg.  They also concluded that the threatening notes to Benvin were
 7   attributed to another inmate.  Also, Doe stated that Benvin had been
 8   starting false rumors about Plaintiff in an attempt to get Plaintiff
 9   fired from his job. (Complaint at 5).

10        Nevertheless, Marrero refused to rescind the order moving
11   Plaintiff to Ad Seg, because he thought that Plaintiff was a
12   possible threat to a staff member.  However, on September 4, 2007,
13   Plaintiff believes that there was a riot in Ad Seg, so he did not
14   immediately go to Ad Seg.

15        On September 5, 2007, at about 12:30 AM, Aranda told
16   Correctional Officers Cluck, Sandoval and Barnhardt (who apparently
17   controlled the opening and closing of Plaintiff's cell door at that
18   time), that he needed to see Plaintiff for official business, and
19   ordered Barnhardt to open Plaintiff's cell door. Barnhardt did so.
20   Aranda entered Plaintiff's cell, asked Plaintiff why he was talking
21   about Aranda's personal business, grabbed Plaintiff's throat, and
22   pinned Plaintiff down to the bed.  Aranda demanded to know to whom
23   Plaintiff had provided the confidential information.  Plaintiff
24   denied providing any information to anyone.  Thereafter, Aranda
25   released his grip on Plaintiff's throat and sat on a table in
26   Plaintiff's cell.  Then, Plaintiff ran out of his cell through the
27   cell's partially open door and placed his hands on the wall in the
28   "arrest position." Aranda exited the cell and told Plaintiff to

09cv1505

return to his cell.  After Plaintiff returned to his cell, Aranda stepped inside the cell and punched Plaintiff on the left side of his jaw.  Aranda ordered Plaintiff not to report the incident and threatened that he could return to Plaintiff's cell if Plaintiff did report the incident.  Aranda ordered Plaintiff to stay away from the prison clinic. (Complaint at 6).  Plaintiff believes that prison staff saw Aranda enter and exit his cell. Aranda denied to prison staff that he had been in Plaintiff's cell, and left the area without reporting the incident. (Complaint at 7).  After Aranda left, Plaintiff was taken to the prison's Program Office, where he reported to Sgt. Dawson the incident involving Aranda. (Complaint at 7).

Thereafter, Correctional Officer Diaz escorted Plaintiff to the medical clinic.  At the clinic, Plaintiff gave a statement to Nurse Estoesia regarding the incident involving Aranda.  Sgt. Diaz noted that Plaintiff had hand marks around his neck and swelling of the jaw. (Complaint at 7).

Plaintiff returned to the Program Office where he gave a video and written statement to Sgt. Dawson and Smith. (Complaint at 7). While Plaintiff was waiting in the Program Office, and after Aranda discovered that Plaintiff had reported the incident involving Aranda, Aranda entered the Program Office and called Plaintiff "a fucking liar," and slammed his fist down on a counter near Plain-tiff.  Plaintiff believes that on September 8, 2007, Aranda told Correctional Officers Sandoval, Cluck, Diaz and Barnhardt that he had entered Plaintiff's cell, "got angry," "lost it," and "put hands on (Plaintiff)." (Complaint at 7-8).

09cv1505

1    Plaintiff believes that after Aranda made the statement to

2  the Correctional Officers, Aranda was removed from the prison.

3  Plaintiff also believes that Benvin was restricted from entering the

4  facility in which Plaintiff was housed. (Complaint at 9).

5    On September 6, 2007, Plaintiff was placed in Ad Seg because

6  it was alleged that he was a suspect in a threat against a staff

7  member, and as a result, he was deemed a threat to the safety and

8  security of the prison. On the same day, Marrero reviewed Plain-

9  tiff's placement in Ad Seg and retained him there pending a decision

10  of the Institutional Classification Committee (hereafter "ICC").

11  (Complaint at 9).

12    On September 19, 2007, the ICC indicated that a "threat

13  assessment" was underway, but added that Plaintiff would not be

14  issued a Rules Violation Report.  Thereafter, the ICC stated that

15  the reason for Plaintiff's placement in Ad Seg was due to an ongoing

16  inquiry about staff misconduct that Plaintiff had made. (Complaint

17  at 9).

18    Plaintiff told the ICC that he wanted to be retained in San

19  Diego because he was awaiting surgery and that his family could

20  easily visit him in San Diego. (Complaint at 9-10).  However, the

21  ICC referred Plaintiff for transfer to another prison.  Plaintiff

22  appealed the referral.  On October 11, 2007, an ICC representative

23  rescinded Plaintiff's transfer because Plaintiff was awaiting

24  surgery and because Plaintiff did not want the transfer. (Complaint

25  at 10).

26    On November 15, 2007, at an ICC meeting, Marrero stated that

27  the investigation into staff misconduct disallowed Plaintiff's

28  return to the prison because he could endanger the safety and

09cv1505

security of the prison.   Plaintiff alleges that there was no
evidence to support this decision. (Complaint at 10).

Plaintiff informed the ICC that he wanted to stay in San
Diego.   But, Cortez recorded the ICC minutes to reflect that
Plaintiff "wanted to transfer."   Plaintiff believes that Cortez
deliberately misreported the minutes to meet the ICC's requirements
for Plaintiff's transfer.  On December 1,2007, Plaintiff was cleared
to return to the general population of the prison. (Complaint at
10). At some time thereafter, Plaintiff was transferred to another
prison.

II

PLAINTIFF'S CLAIMS

Plaintiff claims the following:

(1) His Eighth Amendment right to be free from cruel and unusual
punishment was violated when he was placed and retained in Ad Seg
and transferred to another prison in retaliation for making
complaints about prison staff;

(2) He was retaliated against for the exercise of his First
Amendment right of freedom of speech - making complaints about
prison staff;

(3) His right to due process was violated because he was unable to
provide further information regarding his appeal that Benvin's
conduct be investigated, Benvin attempted to put his life in danger
by revealing to Barno that he was the confidential informant, Benvin
retaliated against him by spreading false rumors about him, that
Aranda's misconduct be investigated, that Plaintiff be provided
copies of all reports generated with respect to the incident

09cv1505

involving Aranda, and that Plaintiff be provided copies of all prior

complaints against Aranda and Benvin.

Defendant's Motion asserts:

(1) Plaintiff's Complaint fails to state a claim for cruel and

unusual punishment in violation of the Eighth Amendment against

Hernandez, Contreras, Marrero, Cortez, Smith, and Cate.

(2) Plaintiff's Complaint fails to state a claim for deliberate

indifference in violation of the Eighth Amendment against Hernandez,

Contreras, Marrero, Cortez, Smith, and Cate.

(3) Plaintiff's Complaint fails to state a claim for retaliation for

exercise of his First Amendment rights against Hernandez, Contreras,

Marrero, Cortez, Smith, and Cate.

(4) Plaintiff's Complaint fails to state a claim for violation of

due process; and,

(5) Hernandez, Contreras, Marrero, Cortez, Smith and Cate are

entitled to qualified immunity.

III

STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to

FED. R. CIV. P. 12(b)(6) tests the legal sufficiency of the claims in

the complaint.  FED. R. CIV. P. 8(a)(2) requires only "a short and

plain statement of the claim showing that the pleader is entitled to

relief" in order to "give the defendant fair notice of what the ...

claim is and the grounds upon which it rests."  Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355

U.S. 41, 47 (1957)); Erickson v. Pardus, 127 S.Ct. 2197, 2200

(2007).  Dismissal of a claim is appropriate only where the

complaint lacks a cognizable theory.  Bell Atlantic, 550 U.S. at

553-565.  The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.  N.L. Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986); Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  The court does not look at whether the plaintiff will "ultimately prevail."  Scheuer v. Rhodes, 94 S.Ct. 1683, 1686 (1974).

"If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim."  Roth v. Garcia Marquez, 942 F.2d 617, 625 n.1 (1991) [quoting Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir.1987)].  "[W]hen the allegations of the complaint are refuted by an attached document, the Court need not accept the allegations as being true."  Roth, 942 F.2d 625 n.1 [citing Ott v. Home Savings & Loan Ass'n, 265 F.2d 643, 646 n.1 (9th Cir.1958)].

"The focus of any Rule 12(b)(6) dismissal . . . is the complaint."  Schneider v. California Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  Thus, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings.  Id.  This precludes consideration of "new" allegations that may be raised in a plain-tiff's opposition to a motion to dismiss brought pursuant to Fed.R.Civ.P. 12(b)(6).  Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993); 2 Moore's Federal Practice, § 12.34[2] (Matthew Bender 3d ed.) ["The court may not . . . take into account

09cv1505

1    additional facts asserted in a memorandum opposing the motion to

2    dismiss, because such memoranda do not constitute pleadings under

3    Rule 7(a)."].

4         To state a claim under 42 U.S.C. § 1983, a plaintiff must

5    show: (1) that the conduct complained of was committed by a person

6    acting under color of state law; and, (2)that the conduct deprived

7    the plaintiff of a constitutional right. Broam v. Bogan, 320 F.3d

8    1023, 1028 (9th Cir. 2003); Balistreri v. Pacifica Police Dept., 901

9    F.2d 696, 699 (9th Cir. 1988).  Vicarious liability does not exist

10   under § 1983. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009); Jones

11   v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (citations omitted).

12   To hold a person "liable under section 1983 there must be a showing

13   of personal participation in the alleged rights deprivation." Id.

14   A supervisory official may be liable only if he or she was person-

15   ally involved in the constitutional deprivation, or if there was a

16   sufficient causal connection between the supervisor's wrongful

17   conduct and the constitutional violation.  See Redman v. County of

18   San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). Causation may be

19   established only by showing that the supervisor set in motion a

20   series of acts by others, which the supervisor knew or reasonably

21   should have known would cause others to inflict the injury.  Watkins

22   v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998).

23        Finally, where a plaintiff appears in propria persona in a

24   civil rights case, the Court must also be careful to construe the

25   pleadings liberally and afford plaintiff any benefit of the doubt.

26   See Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th

27   Cir. 1988); Bretz v. Kelman, 773 F.2d 1026, 1027, n.1 (9th Cir.

28   1985) (en banc).  The rule of liberal construction is "particularly

09cv1505

1    important in civil rights cases." <u>Ferdik v. Bonzelet</u>, 963 F.2d

2    1258, 1261 (9th Cir. 1992); <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448

3    (9th Cir. 1987) ("Presumably unskilled in the law, the pro se

4    litigant is far more prone to making errors in pleading than the

5    person who benefits from the representation of counsel.").   In

6    giving liberal interpretation to a pro se civil rights complaint,

7    however, a court may not "supply essential elements of the claim

8    that were not initially pled." <u>Ivey v. Bd. of Regents of the</u>

9    <u>University of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and

10   conclusory allegations of official participation in civil rights

11   violations are not sufficient to withstand a motion to dismiss."

12   <u>Id.</u>; <u>see also</u> <u>Sherman v. Yakahi</u>, 549 F.2d 1287, 1290 (9th Cir. 1977)

13   ("Conclusory allegations, unsupported by facts, [will be] rejected

14   as insufficient to state a claim under the Civil Rights Act.").

15   Thus, at a minimum, even the pro se plaintiff "must allege with at

16   least some degree of particularity overt acts which defendants

17   engaged in that support [his] claim." <u>Jones v. Community Redevel-</u>

18   <u>opment Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984).

19                                    IV

20   <u>PLAINTIFF FAILS TO STATE A CLAIM OF CRUEL AND UNUSUAL PUNISHMENT</u>

21        <u>AGAINST HERNANDEZ, CORTEZ, MARRERO, SMITH AND CATE</u>

22        Petitioner claims that his Eighth Amendment right to be free

23   from cruel and unusual punishment was violated when he was placed

24   and retained in Ad Seg, and transferred to another prison.

25   Defendants Hernandez, Cortez, Marrero, Smith and Cate argue that

26   Plaintiff's Complaint does not allege a violation of the Eighth

27   Amendment's ban on cruel and unusual punishment.

28

09cv1505

The Eighth Amendment standards for conditions in disciplinary housing are the same as those in the general prison population. Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir. 1982). To show Plaintiff's Eighth Amendment rights have been violated, Plaintiff must make two showings: "First, the plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation. Second, the plaintiff must make a 'subjective' showing that the prison official acted 'with a sufficiently culpable state of mind.'" Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) [quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)]. Finally, the Court must analyze each claimed violation in light of these requirements, for Eighth Amendment violations may not be based on the "totality of the conditions" at prison. Hoptowit, 682 F.2d at 1246-47; Wright v. Rushen, 642 F.2d 1129, 1132 (9th Cir. 1981).

Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the "minimal civilized measure of life's necessities." Johnson, 217 F.3d at 731 (internal citations omitted). This objective component is satisfied so long as the institution "furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety." Hoptowit, 682 F.2d at 1246; Farmer v. Brennan, 511 U.S. 825, 832 (1970); Wright, 642 F.2d at 1132-33. Under the subjective standard, deliberate indifference requires a showing that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at

09cv1505

837. A prison official is deliberately indifferent only if he knows that a prisoner faces a substantial risk of serious harm and disregards it by failing to take reasonable steps to abate it. Id.

### 1. Hernandez and Cate

Plaintiff's Complaint attempts to state a cause of action for cruel and unusual punishment against Hernandez and Cate for placing and retaining him in Ad Seg and transferring him to another prison. However, there are no allegations in Plaintiff's Complaint regarding Hernandez or Cate.  Hernandez, as Director of the Department of Corrections, and Cate, as Secretary of the California Department of Corrections and Rehabilitation, can not be held liable for any of the acts of the other named Defendants because Plaintiff must plead that each official, through that official's own actions or set in motion a series of actions by others, violated the Eighth Amendment. Iqbal, 129 S.Ct. at 1948, Watkins, 145 F.3d at 1093.   Since Plaintiff has failed to allege anything against Hernandez and Cate, the Court RECOMMENDS that Defendants' Motion to Dismiss in this regard be GRANTED without prejudice.

### 2. Cortez

Plaintiff's Complaint attempts to state a cause of action for cruel and unusual punishment for placing and retaining him in Ad Seg and transferring him to another prison. However, the only allega-tions in Plaintiff's Complaint pertaining to Cortez are that Cortez misrecorded minutes of the ICC to reflect that Plaintiff wanted to be transferred to another prison. Plaintiff alleges that he specifically told the ICC that he did not want to be transferred to another prison.   This allegation, taken as true, does not support a cause for action for cruel and unusual punishment in violation of

09cv1505

1   the Eighth Amendment because it does not show that Plaintiff was

2   deprived of the "minimal civilized measures of life's necessities,"

3   or that Cortez knew and disregarded an excessive risk to Plaintiff's

4   health and safety.   Therefore, the Court RECOMMENDS that Defen-

5   dants' Motion to Dismiss in this regard be GRANTED without preju-

6   dice.

7        3. <u>Marrero</u>

8        Plaintiff's Complaint attempts to state a cause of action for

9   cruel and unusual punishment for placing and retaining him in Ad Seg

10  and transferring him to another prison. However, the only allega-

11  tions in Plaintiff's Complaint pertaining to Marrero are that

12  Marrero reviewed Plaintiff's placement in Ad Seg and refused to

13  rescind that order pending an investigation of Plaintiff's alleged

14  threat against a staff member, despite the conclusion of other staff

15  members that Plaintiff did not threaten the staff member.  Further,

16  Plaintiff alleges that Marrero stated that the ongoing investigation

17  into staff misconduct (which Plaintiff himself reported) precluded

18  Plaintiff's return to the prison's general population because he

19  could endanger the safety and security of the prison.

20       Here, Plaintiff's allegations regarding Marrero do not show

21  that his placement and retention in Ad Seg was "sufficiently

22  serious" to form the basis of an Eighth Amendment violation.   Nor

23  are Plaintiff's allegations regarding Marrero sufficient to show

24  that Marrero deprived Plaintiff of the "minimal civilized measures

25  of life's necessities." <u>Johnson</u>, 217 F.3d at 731. Further, Plain-

26  tiff's allegations against Marrero are insufficient to show that

27  Marrero acted "with a sufficiently culpable state of mind," or that

28  Marrero "knew and disregarded an excessive risk to (Plaintiff's)

09cv1505

1   health or safety." <u>Farmer</u>, 511 U.S. at 837. Consequently, Plaintiff

2   has failed to plead the requirements necessary to allege against

3   Marrero a cause of action for cruel and unusual punishment in

4   violation of the Eighth Amendment.[4/]  Therefore, the Court RECOMMENDS

5   that Defendants' Motion to Dismiss in this regard be GRANTED without

6   prejudice.

7        4. <u>Smith</u>

8        Plaintiff's Complaint attempts to state a cause of action for

9   cruel and unusual punishment for placing and retaining him in Ad Seg

10  and transferring him to another prison. However, the only allegation

11  in Plaintiff's Complaint pertaining to Smith is that Smith was in

12  the Program Office where Plaintiff gave a video and written

13  statement about the incident involving Aranda.  This allegation,

14  taken as true, does not support a cause for action for cruel and

15  unusual punishment in violation of the Eighth Amendment because it

16  does not show that Plaintiff was deprived of the "minimal civilized

17  measures of life's necessities," or that Smith knew and disregarded

18  an excessive risk to Plaintiff's health and safety.  Therefore, the

19  Court RECOMMENDS that Defendants' Motion to Dismiss in this regard

20  be GRANTED without prejudice.

21       5. <u>Contreras</u>

22       Plaintiff's Complaint attempts to state a cause of action for

23  cruel and unusual punishment for placing and retaining him in Ad Seg

24

25  [4/]    The Court acknowledges that Plaintiff alleges in his Opposition
        that while he was in Ad Seg, he was "only allowed to go to the yard
26      once in the 123 days that (he) remained there." (Opposition at 5).
        While this allegation may support Plaintiff's claim that his
27      retention in Ad Seg constituted cruel and unusual punishment and/or
        deliberate indifference to Plaintiff's health, the Court may not
28      consider facts stated in Plaintiff's Opposition that were not
        alleged in the Complaint.  <u>Schneider v. Cal. Department of
        Corrections</u>, 151 F.3d 1194, 1197, n. 1 (9th Cir. 1998).

09cv1505

and transferring him to another prison.  However, there are no allegations in Plaintiff's Complaint that pertain to Contreras, except that Contreras denied Plaintiff's appeal regarding the incident involving Aranda. The appeal response, signed by Contreras, is attached to Plaintiff's Complaint as Exh. A-8.

This allegation, taken as true, does not support a cause for action for cruel and unusual punishment in violation of the Eighth Amendment because it does not show that Plaintiff was deprived of the "minimal civilized measures of life's necessities," or that Contreras knew and disregarded an excessive risk to Plaintiff's health and safety.

Further, actions by prison officials with regard to prison grievance procedures can not create liability under § 1983. <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003). Moreover, on September 24, 2007, Contreras *partially granted* Plaintiff's appeal, informed Plaintiff that the matter was referred to the Office of Internal Affairs and that Plaintiff would be notified of the conclusion of the Internal Affairs investigation. (Plaintiff's Complaint, Exh. A-8).  Therefore, the Court RECOMMENDS that Defendants' Motion to Dismiss in this regard be GRANTED with prejudice.

V

<u>PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION FOR THE EXERCISE OF</u>
<u>HIS FIRST AMENDMENT RIGHTS</u>

Plaintiff alleges that Defendants retaliated against him for reporting the misconduct of Benvin and Aranda.  Plaintiff contends that the retaliation took the form of being placed and retained in Ad Seg and being transferred to another prison.  Defendants Hernandez, Marrero, Contreras, Cortez and Smith contend that

09cv1505

1   Plaintiff's Complaint fails to state a claim for retaliation.

2       Prison officials may not retaliate against an inmate for

3   exercising a constitutional right. Rizzo v. Dawson, 778 F.2d 527,

4   532 (9th Cir. 1985). In Rhodes v. Robinson, 408 F.3d 559 (9th Cir.

5   2005), the Ninth Circuit Court of Appeals established a standard for

6   claiming retaliation under the First Amendment. Under this standard,

7   a viable claim of First Amendment retaliation in the prison context

8   is met if five elements are established: (1) an assertion that a

9   state actor took some adverse action against an inmate; (2) because

10  of; (3) that inmates's protected conduct, and that such action; (4)

11  chilled the inmate's exercise of his First Amendment rights, and;

12  (5) the action did not reasonably advance a legitimate correctional

13  goal. Id. at 567-568. Legitimate correctional goals include

14  preserving institutional order and discipline. See Barnett v.

15  Centoni, 31 F.3d 813 (9th Cir. 1994).

16      Here, Plaintiff's Complaint fails to allege any of the

17  elements of a cause of action for retaliation against Hernandez,

18  Contreras, Cortez and Smith. Therefore, the Court finds that

19  Plaintiff's Complaint fails to state a claim of retaliation against

20  these Defendants.

21      The allegations against Marrero are that he placed and

22  retained Plaintiff in Ad Seg pending an investigation that Plaintiff

23  threatened a staff member, a decision of the ICC, and an ongoing

24  inquiry about staff misconduct (about which Plaintiff himself

25  complained). Plaintiff alleges that Marrero prevented him from

26  returning to the prison due to the investigation into staff

27  misconduct. However, these allegations do not satisfy at least two

28  of the elements required to establish a viable claim for retalia-

09cv1505

tion.   Plaintiff fails to allege facts to support element numbers four and five of a claim for retaliation - that Marrero's conduct chilled the exercise of his First Amendment rights and that Marrero's placing and retaining him in Ad Seg and stating that he could not return to the prison's general population, did not advance a legitimate correctional goal.  <u>Rhodes</u>, 408 F.3d at 567-568. Therefore, the Court finds that Plaintiff's Complaint fails to state a cause of action for retaliation against Marrero.

As a result, the Court RECOMMENDS that Defendants' Motion to Dismiss in this regard be GRANTED without prejudice.

VI

<u>PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF DUE PROCESS</u>

Plaintiff asserts that his right to due process was violated because he was unable to provide further information regarding: (1) his administrative appeal contentions that Benvin's conduct be investigated, (2) Benvin attempted to put his life in danger by revealing to Barno that he was the confidential informant, (3) Benvin retaliated against him by spreading false rumors about him, (4) that Aranda's misconduct be investigated, (5) that Plaintiff be provided copies of all reports generated with respect to the incident involving Aranda, and (6) that Plaintiff be provided copies of all prior complaints against Aranda and Benvin.   Defendants contend that these allegations fail to state a claim for violation of due process.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569 (1972).   State statutes and prison regulations may

09cv1505

grant prisoners liberty interests sufficient to invoke due process
protections.   Meachum v. Fano, 427 U.S. 215, 223-27 (1976).
However, the Supreme Court has significantly limited the instances
in which due process can be invoked. In Sandin v. Conner, 515 U.S.
472 (1995), the Supreme Court "refocused the test for determining
the existence of a liberty interest away from the wording of prison
regulations and toward an examination of the hardship caused by the
prison's challenged action relative to the 'basic conditions' of
life as a prisoner." Mitchell v. Dupnik, 75 F.3d 517, 522 (9th Cir.
1996) (citing Sandin, 515 U.S. at 484).

The Supreme Court has specifically held that prisoners have
no constitutionally protected liberty interest in remaining free of
disciplinary segregation.   Sandin, 515 U.S. at 485-486.   Under
Sandin, state-created liberty interests invoking procedural due
process protection are "generally limited to freedom from restraint
which, while not exceeding the sentence in such an unexpected manner
as to give rise to protection by the Due Process Clause of its own
force, nonetheless imposes atypical and significant hardship on the
inmate in relation to the ordinary incidents of prison life." Id. at
484 (citations omitted).

Pursuant to Sandin, Plaintiff must assert facts related to
the conditions or consequences of his placement in Ad Seg which show
"the type of atypical, significant deprivation [that] might
conceivably create a liberty interest."   Id. at 486.   The Sandin
Court relied on three factors to determine that the plaintiff
therein did not possess a liberty interest in avoiding disciplinary
segregation:   (1) disciplinary and discretionary segregation were
essentially the same; (2) comparison between conditions in the

09cv1505

general population and conditions in confinement showed that the plaintiff suffered no "major disruption in his environment"; and (3) the length of plaintiff's sentence was not extended.  Id. at 486-87.

An inmate does not have a liberty interest in being housed at a particular institution or in avoiding isolation or separation from the general prison population unless the proposed transfer will subject the inmate to exceptionally more onerous living conditions, such as those experienced by inmates at a "Supermax" facility. Wilkinson v. Austin, 545 U.S. 209, 223 (2005) (holding that, despite the general rule that an interprison transfer does not implicate the Due Process Clause, a transfer to a so-called "Supermax" facility at which a prisoner would experience exceptionally more onerous conditions may implicate the Due Process Clause); Montayne v. Haymes, 427 U.S. 236, 242 (1976) (holding that a mere transfer from one facility to another does not implicate the Due Process Clause, regardless of whether the transfer is the result of the inmate's misbehavior or is punitive in nature if there is no State law to the contrary).

California law does not create a liberty interest in non-consensual prison transfers requiring procedural due process protection.  CAL. PENAL CODE § 5080; CCR § 3379. Pursuant to Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995), while prisoners generally have no constitutionally protected liberty interest in remaining in a given facility, if they allege retaliation, they may pursue that claim without having to establish "an independent constitutional interest." Id.  However a retaliation claim is properly handled under the First Amendment analysis. Id.  Therefore, while there is no liberty interest in remaining free from non-consensual prison

09cv1505

transfer sufficient to invoke the protection of the Fourteenth
Amendment, Plaintiff may pursue his transfer claim as a retaliation
claim under the First Amendment.

A prisoner can not premise a Fourteenth Amendment due process
claim upon the denial of an appeal within the prison grievance
system because a prisoner does not have a right to due process in
administrative grievance procedures. <u>Ramirez</u>, 334 F.3d at 860. "The
courts of appeal that have confronted the issue are in agreement
that the existence of grievance procedures confers no liberty
interest on a prisoner." <u>Massey v. Helman</u>, 259 F.3d 641, 657 (7th
Cir. 2001).

Here, Plaintiff's claim for violation of his due process
rights is lacking in several respects:

As previously noted, the requirements of due process apply
only to the deprivation of interests encompassed by the Fourteenth
Amendment's protection of liberty and property. <u>Roth</u>, 408 U.S. at
569. A prisoner has no constitutionally protected liberty interest
in remaining free from Ad Seg. <u>Sandin</u>, 515 U.S. at 485-486.
Therefore, to the extent Plaintiff claims that his right to due
process was violated by being placed and retained in Ad Seg, his
claim fails.

To that end, documents attached to Plaintiff's Complaint
indicate that on September 19, 2007, after Plaintiff's initial
placement in Ad Seg, he actively participated in a hearing of the
ICC regarding that placement. At the hearing, Plaintiff was
informed that he was initially placed in Ad Seg after it was
determined that he was a "suspect in a possible threat against a
staff member." Plaintiff was additionally informed that the ICC

09cv1505

1  needed to clarify to Plaintiff that his placement and retention in
2  Ad Seg was also due to an "ongoing inquiry about staff misconduct
3  that he made."  The ICC determined that Plaintiff would be retained
4  in Ad Seg and it reaffirmed its recommendation that Plaintiff be
5  transferred to another prison.  Plaintiff indicated that he
6  understood the ICC's decision. (Plaintiff's Complaint, Exh. B-10).
7  Plaintiff's Complaint does not allege that the procedures employed
8  or the hearing held regarding his placement and retention in Ad Seg,
9  and the recommendation the he be transferred to another prison, were
10 constitutionally inadequate.  Accordingly, the Court finds that to
11 the extent Plaintiff claims that his placement and retention in Ad
12 Seg or the procedures employed with regard to that placement
13 violated his due process rights, his claim fails.

14     The Constitution does not guarantee that an inmate will be
15 placed or retained at a particular prison even when the degree of
16 confinement at one prison might be different from another prison.
17 Meachum, 427 U.S. at 224-225; Myron v. Terhune, 476 F.3d 716, 718
18 (9th Cir. 2007).  Therefore, to the extent Plaintiff claims that his
19 due process rights were violated by being transferred to another
20 prison, his claim fails.

21     As previously noted, a prisoner does not have the right to
22 due process in administrative grievance procedures.  Ramirez, 334
23 F.3d at 860.  Therefore, to the extent that Plaintiff claims his due
24 process rights were violated by his inability to submit further
25 information, his claim fails.  Plaintiff's allegations regarding his
26 administrative appeal contentions that Benvin's conduct be investi-
27 gated, that Benvin attempted to put his life in danger by revealing
28 to Barno that he was the confidential informant, that Benvin

09cv1505

retaliated against him by spreading false rumors about him, that Aranda's conduct be investigated and that he be provided certain documents created in connection with the incident involving Aranda, are insufficient to state a valid claim for violation of due process.

Accordingly, the Court RECOMMENDS Defendants' Motion to Dismiss Plaintiff's due process claims be GRANTED without prejudice.

VII

DEFENDANTS MARRERO, SMITH, CONTRERAS, CATE AND HERNANDEZ ARE ENTITLED TO QUALIFIED IMMUNITY

Defendants Marrero, Smith, Contreras, Cate, and Hernandez contend that they are entitled to qualified immunity.

The Eleventh Amendment prohibits damages actions against state officials acting in their official capacities. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n.10 (1989). However, it does not "bar actions against state officers in their official capacities if the plaintiffs seek only a declaratory judgment or injunctive relief." Chaloux v. Killeen, 886 F.2d 247, 252 (9th Cir. 1989) (internal citations omitted). Nor does it bar damage actions against state officials in their personal capacities. See Hafer v. Melo, 502 U.S. 21, 31 (1991). The Eleventh Amendment prohibits only damage actions against the "official's office;" actions that are in reality suits against the state itself-rather than against its individual officials. Id. at 26-27.

Here, Plaintiff clearly indicates his intent to sue the above-named Defendants for damages in both their individual and official capacities. (Complaint at 2-3). For this reason it is RECOMMENDED that Defendants' Motion to Dismiss be GRANTED with

09cv1505

1    prejudice with respect to Plaintiff's claim for damages against

2    Defendants in their official capacities.

3            1. Qualified Immunity

4        Marrero, Smith, Contreras, Cate and Hernandez assert that

5    they are protected from suits for civil damages due to the doctrine

6    of qualified immunity because their conduct did not violate any

7    clearly-established right under the circumstances in which they

8    acted. These Defendants further claim that they are entitled to

9    dismissal pursuant to FED.R.CIV.P. 12(b)(6) based on their qualified

10   immunity. The entitlement to qualified immunity "is an immunity from

11   suit rather than a mere defense to liability." Mitchell v. Forsyth,

12   472 U.S. 511, 526 (1985).   The defense of "qualified immunity"

13   protects "government officials . . . from liability for civil

14   damages insofar as their conduct does not violate clearly estab-

15   lished statutory or constitutional rights of which a reasonable

16   person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818

17   (1982).  This standard "'gives ample room for mistaken judgments' by

18   protecting 'all but the plainly incompetent or those who knowingly

19   violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per

20   curiam) (quoting Malley v. Briggs , 475 U.S. 335, 343 (1986));

21   Jeffers v. Gomez, 267 F.3d 895, 909-910 (9th Cir. 2001).[5/]

22       The Supreme Court recently held that the test for qualified

23   immunity in Saucier v. Katz, 533 U.S. 194 (2001), is no longer a

24   rigid two step analysis. Pearson v. Callahan, 192 S.Ct. 808 (2009)

25   However, the Saucier analysis is still pertinent for qualified

26

27   [5/]    The affirmative defense of qualified immunity does not extend to
         claims for declaratory or injunctive relief. Keenan v. Hall, 83
         F.3d 1083, 1093 (9th Cir. 1996) (citing American Fire, Theft &
28       Collision Managers, Inc. v. Gillespie, 932 F.2d 816, 818 (9th Cir.
         1991). The Court takes notice that Plaintiff is also seeking
         injunctive and declaratory relief.

09cv1505

immunity purposes. <u>Pearson</u>, 192 S.Ct. at 818. Pursuant to <u>Saucier</u>, the first step in a qualified immunity analysis is, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier,</u> 533 U.S. at 201; <u>Jackson v. City of Bremerton</u>, 268 F.3d 646, 650 (9th Cir. 2001); <u>Johnson v. County of Los Angeles</u>, 340 F.3d 787, 791 (9th Cir. 2003) (noting that because qualified immunity is "'an entitlement not to stand trial' ... courts, not juries, [must] settle the ultimate questions of qualified immunity") (quoting <u>Mitchell</u>, 472 U.S. at 526). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." <u>Saucier</u>, 533 U.S. at 201; <u>Haynie v. County of Los Angeles</u>, 339 F.3d 1071, 1078 (9th Cir. 2003). The second step of the qualified immunity analysis is whether "it would be clear to a reasonable officer that (Plaintiff's) conduct was unlawful in the situation he confronted." <u>Saucier</u> 533 U.S. at 202, <u>Wilkins v. City of Oakland</u> 350 F.3d 949, 954 (9th Cir. 2003).

As previously noted in this Report and Recommendation, Plaintiff's Complaint failed to set forth sufficient allegations to support a claim of retaliation for the exercise of his First Amendment rights against Marrero, Smith, Contreras, Cate and Hernandez. (See Section V of this Report and Recommendation). As a result, Plaintiff does not satisfy the first prong of <u>Saucier</u> because the facts alleged in his Complaint do not show that Defendants' conduct violated a constitutional right. <u>Saucier</u> 533

U.S. at 201. Therefore, the Court RECOMMENDS that Defendants'

1   Motion to Dismiss in this regard be GRANTED without prejudice.

2                               VIII

3                   CONCLUSION AND RECOMMENDATION

4        For the reasons set forth herein, the Court RECOMMENDS as

5   follows:

6        (1) The Court RECOMMENDS Defendants' Motion to Dismiss

7   Plaintiff's Eighth Amendment cruel and unusual punishment and

8   deliberate indifference claims be GRANTED without prejudice.

9        (2) The Court RECOMMENDS that Defendants' Motion to Dismiss

10  Plaintiff's claim for Retaliation for Exercise of his First

11  Amendment rights be GRANTED without prejudice.

12       (3) The Court RECOMMENDS Defendants' Motion to Dismiss

13  Plaintiff's Due Process claims be GRANTED without prejudice.

14       (4) The Court RECOMMENDS Defendants' Motion to Dismiss with

15  regard to Plaintiff's claim for damages against Defendants in their

16  official capacities be GRANTED with prejudice.

17       (5) The Court RECOMMENDS that Plaintiff's claim for damages

18  against Defendants in their individual capacities be GRANTED without

19  prejudice.

20       (6) The Court RECOMMENDS that Plaintiff be given a reasonable

21  amount of time to amend his Complaint.

22       This report and recommendation of the undersigned Magistrate

23  Judge is submitted to the United States District Judge assigned to

24  this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

25       **IT IS ORDERED** that no later than June 1, 2010, any party to

26  this action may file written objections with the Court and

27

28  serve a copy on all parties.  The document should be captioned

09cv1505

1   "Objections to Report and Recommendation."

2         **IT IS FURTHER ORDERED** that any reply to the objections

3 shall be filed with the Court and served on all parties no later

4 than <u>June 14, 2010</u>. The parties are advised that failure to file

5 objections within the specified time may waive the right to raise

6 those objections on appeal of the Court's order. <u>Martinez v. Ylst</u>,

7 951 F.2d 1153 (9th Cir. 1991).

8

9

  DATED:  May 3, 2010

10

11

12                          Hon. William V. Gallo

                          U.S. Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

09cv1505