UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL DENHAM,<br><br>             Plaintiff,<br><br>v.<br><br>CORRECTIONAL OFFICER ARANDA,<br>et al.,<br><br>             Defendants. | Civil No. 09-CV-1505-JLS(WVG)<br><br>REPORT AND RECOMMENDATION<br>ON DEFENDANTS' MOTION TO<br>DISMISS<br><br>(Doc. No. 39) |

On July 30, 2010, Paul Denham ("Plaintiff"), an inmate proceeding *pro se* and *in forma pauperis*, filed a First Amended Complaint ("FAC") pursuant to 42 U.S.C. Section 1983, claiming that his civil rights were violated in August 2007, when he was housed at the Richard J. Donovan Correctional Facility ("RJD"). He sued all Defendants in their individual capacities, and seeks compensatory damages, punitive damages and reimbursement of the costs he incurred in pursuing this litigation. Defendants have filed a Motion to Dismiss. The undersigned, having reviewed the Complaint, First Amended Complaint, Opposition, Reply, and for good cause appearing, hereby RECOMMENDS that Defendants' Motion to Dismiss be GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff sues the following Defendants: Correctional Officer Aranda; Nurse Benvin; Captain Marrero; E.A. Contreras; Silvia Garcia; P. Cortez; Mr. Hernandez, Director of Corrections; Matthew Cate, Secretary of the California Department of Correction and Rehabilitation; and Mr. K. Smith.[1]

Plaintiff is an inmate at Salinas Valley State Prison. He alleges that, while he was incarcerated at RJD, he worked in the prison medical clinic, where he became aware of misconduct by inmates and staff. Specifically, Plaintiff alleges that inmate Barno committed wrongdoings when he was assigned to work at the clinic. Plaintiff confidentially provided the information regarding the misconduct to Correctional Officer Diaz.

On August 8, 2007, Plaintiff was questioned by a correctional officer, who Plaintiff identifies as "J. Doe," to protect his identity. Doe told Plaintiff that he (Doe) feared physical harm should Aranda[2] discover his identity and that Aranda had the reputation for violence. Doe's identity is known to Sgt. Strickland and Lt. Garza. Plaintiff described Barno's wrongdoings to Doe and also reported that Benvin was providing contraband to inmates. Plaintiff alleged that Benvin could be a source of syringes for inmates, and that she was having an affair with Aranda.

On August 12, 2007, inmate Barno questioned and threatened

---

[1] The Court notes that Defendants' Motion is not brought on behalf of Garcia, Aranda, and Benvin, who have not been served in this action.

[2] Plaintiff alleges that Aranda was having an affair with Benvin. Benvin worked at the prison medical clinic.

1    Plaintiff.  Barno told Plaintiff that Benvin said Plaintiff provided
2    confidential information to prison authorities to get Barno fired
3    from his medical clinic job and, further, that Benvin planned to
4    retaliate against Plaintiff by falsely accusing Plaintiff of
5    threatening her.  Plaintiff denied that he was the confidential
6    informant, and said that Benvin was trying to have him assaulted
7    because she suspected Plaintiff was the confidential informant.
8    Plaintiff told Barno to report the foregoing to the Office of
9    Internal Affairs.
10          On August 14, 2007, Plaintiff sent a written statement to Doe
11   that described the information provided to him by Barno.  On August
12   15, 2007, Doe informed Plaintiff that he (Doe) had made copies of
13   the written statement and forwarded the original statement to Sgt.
14   Bravado in the Office of Internal Affairs.
15          On September 4, 2007, Benvin informed the authorities at RJD
16   that Plaintiff had threatened her.  The threat was contained in two
17   notes.
18          Thereafter, Strickland told Plaintiff that he was ordered to
19   move to Administrative Segregation ("Ad Seg") because he was accused
20   of threatening staff.  Plaintiff told Strickland about his allega-
21   tions regarding Barno and Benvin.  Strickland, and later Garza,
22   concluded that there was no reason to put Plaintiff in Ad Seg.  They
23   also concluded that the threatening notes to Benvin were attributed
24   to another inmate.  Also, Doe stated that Benvin had been starting
25   false rumors about Plaintiff in an attempt to get Plaintiff fired
26   from his job in the prison's medical clinic.
27          Nevertheless, Marrero refused to rescind the order moving
28   Plaintiff to Ad Seg because he thought Plaintiff was a possible

threat to a staff member. Plaintiff's move to Ad Seg was slightly delayed due to a riot.

On September 5, 2007, at about 12:30 a.m., Aranda told Correctional Officers Cluck, Sandoval and Barnhardt (who controlled the opening and closing of Plaintiff's cell door), that he needed to see Plaintiff for official business, and ordered Barnhardt to open Plaintiff's cell door. Barnhardt did so. Aranda entered Plaintiff's cell, asked Plaintiff why he was talking about Aranda's personal business, grabbed Plaintiff's throat, and pinned him down to the bed. Aranda demanded to know to whom Plaintiff had provided the confidential information. Plaintiff denied providing any information to anyone. Thereafter, Aranda released his grip on Plaintiff's throat and sat on a table in Plaintiff's cell. Plaintiff ran out of his cell through the cell's partially open door and placed his hands on the wall in the "arrest position." Aranda exited the cell and told Plaintiff to return to his cell. After Plaintiff returned to his cell, Aranda stepped inside the cell and punched Plaintiff on the left side of his jaw. Aranda ordered Plaintiff not to report the incident and threatened that he could return to Plaintiff's cell if Plaintiff did report the incident. After Aranda left, Plaintiff was taken to the prison's Program Office, where he reported to Sgt. Dawson the incident involving Aranda.

Thereafter, Correctional Officer Diaz escorted Plaintiff to the medical clinic. At the clinic, Plaintiff gave a statement to Nurse Estoesia regarding the incident involving Aranda. Officer Diaz noted that Plaintiff had a swollen jaw and hand marks around his neck.

1	Plaintiff returned to the Program Office where he gave a video and written statement to Sgt. Dawson and Smith. While Plaintiff was waiting in the Program Office, and after Aranda discovered that Plaintiff had reported the incident involving him, Aranda entered the Program Office and called Plaintiff "a fucking liar," and slammed his fist down on a counter near Plaintiff. Plaintiff believes that on September 8, 2007, Aranda told Correctional Officers Sandoval, Cluck, Diaz and Barnhardt that he had entered Plaintiff's cell, "got angry," "lost it," and "put hands on (Plaintiff)."

Plaintiff believes that after Aranda made the statement to the Correctional Officers, Aranda was removed from the prison. Plaintiff also believes that Benvin was restricted from entering the facility in which Plaintiff was housed.

On September 6, 2007, Plaintiff was placed in Ad Seg because it was alleged that he was a suspect in a threat against a staff member, and he was deemed a threat to the safety and security of the prison as a result. On the same day, Marrero reviewed Plaintiff's placement in Ad Seg and kept him there pending a decision of the Institutional Classification Committee ("ICC").

On September 19, 2007, the ICC indicated that a "threat assessment" was underway, but added that Plaintiff would not be issued a Rules Violation Report. Thereafter, the ICC stated that the reason for Plaintiff's placement in Ad Seg was due to an ongoing inquiry about Plaintiff's staff misconduct report.

Plaintiff told the ICC that he wanted to stay in San Diego because he was awaiting surgery and so his family could easily visit him. Nonetheless, the ICC referred Plaintiff for transfer to

1  another prison.  Plaintiff appealed the referral.  On October 11,
2  2007, an ICC representative rescinded Plaintiff's transfer because
3  Plaintiff was awaiting surgery and because Plaintiff did not want
4  the transfer.

5  On November 15, 2007, at an ICC meeting, Marrero stated that
6  the investigation into staff misconduct prevented Plaintiff's return
7  to general population because he could endanger the safety and
8  security of the prison.  Plaintiff alleges that there was no
9  evidence to support this finding.

10  Plaintiff again informed the ICC that he wanted to stay in
11  San Diego, but Cortez incorrectly recorded the ICC minutes to
12  reflect that Plaintiff "wanted to transfer."  Plaintiff believes
13  that Cortez deliberately misreported the minutes to meet the ICC's
14  requirements for Plaintiff's transfer.  On December 1, 2007,
15  Plaintiff was cleared to return to the general population of the
16  prison.  At some point thereafter, Plaintiff was transferred to
17  another prison.

**B.      The Results of Defendants' First Motion to Dismiss[3]**

The Honorable Janis L. Sammartino's adoption of the under-signed's first Report and Recommendation ("R&R") resulted in the

---

[3] Defendants filed their first motion on December 4, 2009, and argued that Plaintiff (1) failed to state a claim for retaliation, (2) failed to state a claim for Eighth Amendment cruel and unusual punishment, (3) failed to state a claim for violation of due process, and (4) that Defendants were entitled to immunity. The undersigned submitted an R&R on May 3, 2010, and recommended that (1) the Eighth Amendment claims be dismissed without prejudice, (2) the retaliation claim be dismissed without prejudice, (3) the due process claim be dismissed with prejudice, (4) all claims for damages against Defendants in their official capacities be dismissed with prejudice, (5) claims for damages against Defendants in their individual capacities be dismissed without prejudice, and (6) that Plaintiff be given reasonable time to amend his Complaint. Plaintiff did not file objections, and the undersigned's R&R was adopted in full.

following:

(1) As to the claim for violation of the Eighth Amendment:

   (a) Dismissed <u>with</u> prejudice against Cortez and Contreras; and

   (b) Dismissed <u>without</u> prejudice against Hernandez, Cate, Marrero, and Smith;

(2) Dismissed <u>without</u> prejudice Plaintiff's claim for retaliation against all Defendants;

(3) Dismissed <u>without</u> prejudice Plaintiff's claim for violation of due process;[4/] and

(4) Dismissed <u>with</u> prejudice all claims against all Defendants in their official capacities (but not in their individual capacities).

**C.   Plaintiff's Current Claims**

    Plaintiff claims the following:

(1) His Eighth Amendment right to be free from cruel and unusual punishment was violated when he was placed and kept in Ad Seg and transferred to another prison in retaliation for making complaints about prison staff; and

(2) He was retaliated against for the exercise of his First Amendment right to free speech (making complaints about prison staff).

**D.   Defendants' Current Grounds for Dismissal**

    Defendants' Motion asserts:

(1) Plaintiff's Complaint fails to state a claim for cruel and unusual punishment in violation of the Eighth Amendment against Hernandez, Contreras, Marrero, Cortez, Smith, and Cate;

(2) Plaintiff's Complaint fails to state a claim for retaliation for

---

[4/] Plaintiff has apparently abandoned this claim.

1  exercise of his First Amendment rights against Hernandez, Contreras,
2  Marrero, Cortez, Smith, and Cate; and
3  (3) Hernandez, Contreras, Marrero, Cortez, Smith, and Cate are
4  entitled to qualified immunity.

### III. LEGAL STANDARD

#### A. Motions To Dismiss

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); Erickson v. Pardus, 551 U.S. 89, 93 (2007). Dismissal of a claim is appropriate only where the complaint lacks a cognizable theory. Twombly, 550 U.S. at 554-55. The test, as authoritatively formulated by Twombly, is whether the complaint alleges "enough fact[] to state a claim to relief that is plausible on its face," id. at 570, which is to say, "'enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity],'" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 556) (alteration in Arista Records).

The Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. N.L. Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.

1986); <u>Parks Sch. of Bus., Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995). "It is well settled that when a federal court reviews the grant of a Rule 12 motion to dismiss, 'its task is necessarily a limited one.'" <u>Mohamed v. Jeppesen Dataplan</u>, Inc., 579 F.3d 943, 960 (9th Cir. 2009) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)). That limited task "is not [to determine] whether a plaintiff will ultimately prevail," <u>id.</u>, but instead only whether the complaint "state[s] a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6).

"The focus of any Rule 12(b)(6) dismissal . . . is the complaint." <u>Schneider v. Cal. Dep't of Corr.</u>, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Thus, when resolving a motion to dismiss for failure to state a claim, a court generally may not consider materials outside the pleadings. <u>Id.</u> This precludes consideration of new allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought under Rule 12(b)(6). <u>Id.</u> (citing <u>Harrell v. United States</u>, 13 F.3d 232, 236 (7th Cir. 1993).

**B.    Pleading Requirements Under 42 U.S.C. Section 1983**

To state a claim under 42 U.S.C. Section 1983, a plaintiff must show: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that the conduct deprived the plaintiff of a constitutional right. <u>Broam v. Bogan</u>, 320 F.3d 1023, 1028 (9th Cir. 2003); <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988). Vicarious liability does not exist under Section 1983. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1948 (2009); <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002) (citations omitted). To hold a person "liable under section 1983 there must be a showing of personal participation in the alleged

rights deprivation." Jones, 297 F.3d at 934. A supervisory official may be liable only if he or she was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. See Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). Causation may be established only by showing that the supervisor set in motion a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict the injury. Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998).

### C. Special Considerations For *Pro Se* Plaintiffs

Where a plaintiff appears *in propria persona* in a civil rights case, the Court must also be careful to construe the pleadings liberally and afford him any benefit of the doubt. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988); Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). The rule of liberal construction is "particularly important in civil rights cases." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) ("Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel."), *superceded by statute on other grounds as recognized in* Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). In giving liberal interpretation to a *pro se* civil rights complaint, however, a court may not "supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of

official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id.; see also Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir. 1977) ("Conclusory allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act."). Thus, at a minimum, even the *pro se* plaintiff "must allege with at least some degree of particularity overt acts which defendants engaged in that support [his] claim." Jones v. Cmty. Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984).

## IV. DISCUSSION

### A. Plaintiff Continues To Fail To State A Claim For Cruel And Unusual Punishment Against Hernandez, Cortez, Marrero, Smith, And Cate

By order on June 21, 2010, the Honorable Janis L. Sammartino adopted the undersigned's R&R, which recommended that the Complaint's first claim for violation of the Eighth Amendment be dismissed without prejudice. Judge Sammartino granted Plaintiff leave to amend to cure "the deficiencies stated" in the R&R. However, Plaintiff's FAC contains nearly identical allegations in support of this claim. Plaintiff made the following two changes:

> (1) Added "and we departed in good terms" to the last paragraph on page 4, and
> (2) Added the last two paragraphs on page 8, which state that he has exhausted his claims and request that the United States Marshal effect service onto Officer Aranda and Nurse Benvin.

The FAC remains otherwise unchanged. Neither of these additions cure the defects set forth on pages 11 through 16 of the undersigned's previous R&R. Rather than repeat that analysis here, the undersigned incorporates it by reference and again recommends that the Plaintiff's Eighth Amendment cruel and unusual punishment claim

be dismissed against Hernandez, Cortez, Marrero, Smith, and Cate as indicated below.

### 1. Hernandez and Cate: Dismiss With Prejudice

In the first R&R, the undersigned noted the absence of any allegations regarding Hernandez's and Cate's personal involvement. The undersigned previously recommended dismissing this claim against Hernandez and Cate without prejudice. Since Plaintiff's FAC continues to be devoid of allegations of personal involvement against Hernandez and Cate, the undersigned recommends the Eighth Amendment claim against them be DISMISSED WITH PREJUDICE.

### 2. Cortez: Dismiss With Prejudice

Plaintiff again fails to allege any additional acts by Cortez beyond his incorrectly recording minutes of the ICC meeting. Because the R&R previously concluded that this allegation was insufficient to maintain an Eighth Amendment claim, the undersigned now recommends that the Eighth Amendment claim against Cortez be DISMISSED WITH PREJUDICE.

### 3. Marrero: Dismiss With Prejudice

Plaintiff alleges no additional facts against Marrero that establish that he "deprived Plaintiff of the 'minimal civilized measures of life's necessities,'" that he "acted 'with a sufficiently culpable state of mind,'" or "that Marerro 'knew and disregarded an excessive risk to (Plaintiff's) health or safety.'" (R&R at 13-14.) The undersigned therefore recommends that the Eighth Amendment claim against Marrero be DISMISSED WITH PREJUDICE.

### 4. Smith: Dismiss With Prejudice

As with Marrero, Plaintiff alleges no additional facts against Smith to establish the requirements quoted immediately

above. (R&R at 14-15.) The undersigned therefore recommends that the Eighth Amendment claim against Smith be DISMISSED WITH PREJUDICE.

**B. Retaliation For Exercise of First Amendment Rights**

    **1. Plaintiff States a Claim For Retaliation Against Marrero, Cortez, and Contreras**

Plaintiff alleges that Defendants retaliated against him for reporting the misconduct of Benvin and Aranda. Plaintiff contends that the retaliation took the form of being placed and retained in Ad Seg and being transferred to another prison. Defendants contend that Plaintiff's FAC fails to state a claim for retaliation.

Prison officials may not retaliate against an inmate for exercising a constitutional right. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). In Rhodes v. Robinson, 408 F.3d 559 (9th Cir. 2005), the Ninth Circuit established a standard for claiming retaliation under the First Amendment. Under this standard, a viable claim of First Amendment retaliation in the prison context is met if five elements are satisfied: (1) an assertion that a state actor took some adverse action against an inmate; (2) because of; (3) that inmates's protected conduct; (4) that such action chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. Id. at 567-68.

In contrast to the original Complaint, the FAC sufficiently alleges a retaliation claim. First, Plaintiff alleges adverse action was taken against him when he was locked in Ad Seg, suffered serious limitations on various freedoms he enjoyed in general population as a result, and transferred to a different prison, away

from his family and attorney. (FAC at 10, ¶ 2 (explaining various freedom limitations).) Second, Plaintiff alleges he was placed in Ad Seg "because of" his reporting prison staff misconduct. (FAC at 11 ("[T]he Defendants made this false claim to prevent me from returning <u>because</u> I filed my complaints.") (emphasis added).) Third, Plaintiff sufficiently pleads that the alleged adverse action was in response to Plaintiff's exercise of protected conduct--*i.e.*, his complaints to prison officials. (<u>Id.</u>) Fourth, Plaintiff sufficiently pleads a chilling effect. (<u>Id.</u> at 10 ("Defendants' action has a chilling effect on First Amendment rights because it would chill or silence a person of ordinary firmness from filing similar complaints.").) For this element, the undersigned notes that Plaintiff does not have to allege that his First Amendment right was totally chilled. <u>Rhodes</u>, 408 F.3d at 568-69. Finally, Plaintiff alleges there was no valid penological goal for his continued presence in Ad Seg or prison transfer because Aranda and Benvin had been either fired or prohibited from entering his housing unit, and Plaintiff's alleged staff threats had been proven forged <u>before</u> he requested release to general population and his prison transfer. (FAC at 5 ("Aranda had been permanently removed from the prison yard. As such, there was no legitimate penological interest to retain me in [Ad Seg] pending the investigation because nurse Benvin had already been permanently removed, and investigative staff had concluded that the staff threat was attributed to another inmate and c/o Aranda had confessed to his misconduct.").) Liberally construing Plaintiff's allegations and drawing all reasonable inference therefrom, as the Court must do at the motion to dismiss

stage, the FAC sufficiently pleads a cognizable theory in support of the retaliation claim.

Nonetheless, Defendants seem to argue the merits of the retaliation claim, in particular whether their actions reasonably advanced a legitimate correctional goal. Indeed, the undersigned notes that the sole case Defendants cite in support of their argument was an appeal from a summary judgment motion. See Barnett v. Centoni, 31 F.3d 813, 814 (9th Cir. 1994) ("California state prisoner Lee Max Barnett, a death row inmate, appeals pro se the district court's summary judgment in favor of corrections officials in Barnett's 42 U.S.C. § 1983 action.") However, Defendants must keep in mind that a motion to dismiss is a challenge to a claim's facial validity, not an adjudication on the merits. At this stage, the Court's focus is on the sufficiency of the FAC. In other words, does Plaintiff allege a cognizable theory that could support his claims? Plaintiff merely has to allege facts that support his claim to survive a motion to dismiss. Even if the retaliation claim is presently ripe for summary judgment, Defendants' analysis ignores the standard by which the Court is bound at the motion to dismiss stage.

For purposes of a motion to dismiss, Plaintiff's amended retaliation claim survives facial review. The undersigned therefore recommends that Defendants' Motion to Dismiss the retaliation claim against Marrero, Cortez, and Contreras be DENIED.

### 2. Plaintiff Continues to Fail to State a Claim For Retaliation Against Hernandez and Smith

Plaintiff's FAC contains no allegations of retaliation against Hernandez and Smith. This deficiency was specifically

pointed out to Plaintiff in the undersigned's first R&R. (R&R at 17:16-20.) The undersigned therefore recommends that the Motion be GRANTED and the retaliation claim against Hernandez and Smith be DISMISSED WITH PREJUDICE.

**D. Qualified Immunity**

Defendants Marrero, Smith, Cortez, Contreras, Cate, and Hernandez again assert that the qualified immunity doctrine shields them from suit because their conduct did not violate any clearly-established right under the circumstances in which they acted. They claim that they are entitled to dismissal pursuant to Rule 12(b)(6) as a result. The undersigned concludes that Defendants Hernandez, Smith, and Cate are entitled to qualified immunity protection, while Defendants Marrero, Cortez, and Contreras are not.

**1. Qualified Immunity Legal Standard**

The entitlement to qualified immunity "is an immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The defense of "qualified immunity" protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 343 (1986)); Jeffers v. Gomez, 267 F.3d 895, 909-10 (9th Cir. 2001).[5]

---

[5] The affirmative defense of qualified immunity does not extend to claims for declaratory or injunctive relief. Keenan v. Hall, 83 F.3d 1083, 1093 (9th Cir. 1996) (citing Am. Fire, Theft & Collision

The Supreme Court recently held that the test for qualified immunity in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), is no longer a rigid two step analysis. <u>Pearson v. Callahan</u>, 192 S. Ct. 808 (2009) However, the <u>Saucier</u> analysis is still pertinent for qualified immunity purposes. <u>Id.</u> at 818. Pursuant to <u>Saucier</u>, the first step in the analysis is: "[T]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier</u>, 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." <u>Id.</u>; <u>see also</u> <u>Haynie v. County of Los Angeles</u>, 339 F.3d 1071, 1078 (9th Cir. 2003). The second step of the qualified immunity analysis is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 202; <u>see also</u> <u>Wilkins v. City of Oakland</u>, 350 F.3d 949, 954 (9th Cir. 2003).

**2. Marrero, Cortez, and Contreras Are Not Entitled To Qualified Immunity**

In the first R&R, the undersigned concluded that Defendants were entitled to qualified immunity because Plaintiff did not satisfy the first prong of <u>Saucier</u> when the facts alleged in the Complaint failed to allege that Defendants' conduct violated a constitutional right. (R&R at 16-17.) However, in the FAC, Plaintiff has sufficiently alleged a constitutional violation, as explained above. Plaintiff thus satisfies <u>Saucier</u>'s first prong.

---

<u>Managers, Inc. v. Gillespie</u>, 932 F.2d 816, 818 (9th Cir. 1991). The Court takes notice that Plaintiff is also seeking injunctive and declaratory relief.

Turning to the second prong, the Court must "inquir[e] into the reasonableness of the officer's belief in the legality of his actions." Wilkins, 350 F.3d at 955. Thus, "[e]ven if his actions did violate the [Constitution], a reasonable but mistaken belief that his conduct was lawful would result in the grant of qualified immunity." Id.

Taking Plaintiff's allegations as true, a reasonable officer would have known that subjecting Plaintiff to Ad Seg confinement without continuing justification, and then transferring him to another prison even after the involved prison staff had been disciplined for their misconduct, was in violation of the law if done to silence or punish Plaintiff for his complaints, as Plaintiff alleges. Rhodes, 408 F.3d at 567 ("Of fundamental import to prisoners are their First Amendment 'right[s] to file prison grievances.'") (quoting Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003)); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) ("In Rizzo v. Dawson, 778 F.2d 527 (9th Cir. 1985), . . . we held that prison officials could not transfer an inmate to another prison in retaliation for the inmate's exercise of his First Amendment right to pursue federal civil rights litigation."); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) ("A prisoner's right to meaningful access to the courts, along with his broader right to petition the government for a redress of his grievances under the First Amend-ment, precludes prison authorities from penalizing a prisoner for exercising those rights. . . . The right of meaningful access to the courts extends to established prison grievance procedures.") (citations omitted), *abrogated on other grounds as recognized in* Brodheim v. Cry, 584 F.3d 1262 (9th Cir. 2009). In other words, any

such conduct would have been in violation of established law, and thus a knowing violation of the law. See Pratt, 65 F.3d at 806 ("[T]he prohibition against retaliatory punishment is "clearly established law" in the Ninth Circuit, for qualified immunity purposes.") (citing Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995)). As a result, Defendants Marrero, Cortez, and Contreras are not entitled to qualified immunity and the undersigned recommends that the Motion to Dismiss be DENIED in this regard.

### 3. Hernandez, Smith, and Cate Are Entitled to Immunity

Plaintiff's FAC contains no allegations that vitiate the qualified immunity claim by Hernandez, Smith, and Cate. The undersigned therefore recommends that the Motion be GRANTED and the entire case against Hernandez, Smith, and Cate be DISMISSED WITH PREJUDICE.

### VIII. CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, the Court RECOMMENDS as follows:

(1) Defendants' Motion to Dismiss Plaintiff's Eighth Amendment cruel and unusual punishment and deliberate indifference claims be GRANTED WITH PREJUDICE against Hernandez, Cate, Cortez, Marrero, and Smith.[6]

(2) Defendants' Motion to Dismiss Plaintiff's claim for retaliation against Marrero, Cortez, and Contreras be DENIED.

(3) Defendants' Motion to Dismiss Plaintiff's claim for retaliation against Hernandez and Smith be GRANTED WITH PREJUDICE.

(4) Based on the qualified immunity doctrine, that the Motion

---

[6] The previous, adopted R&R recommended this claim be dismissed with prejudice against Contreras. Garcia, Aranda, and Bevins have not been served in this case.

1  to Dismiss Plaintiff's claims against Marrero, Cortez, and Contreras
2  in their individual capacities be DENIED.
3      (5) Based on the qualified immunity doctrine, that the Motion
4  to Dismiss Plaintiff's claims against Hernandez, Smith, and Cate in
5  their individual capacities be GRANTED WITH PREJUDICE.
6      This report and recommendation of the undersigned Magistrate
7  Judge is submitted to the United States District Judge assigned to
8  this case, pursuant to the provision of 28 U.S.C. Section 636(b)(1).
9      **IT IS ORDERED** that no later than January 28, 2011, any party
10 to this action may file written objections with the Court and serve
11 a copy on all parties.  The document should be captioned "Objections
12 to Report and Recommendation."
13     **IT IS FURTHER ORDERED** that any reply to the objections
14 shall be filed with the Court and served on all parties no later
15 than February 25, 2011.  The parties are advised that failure to
16 file objections within the specified time may waive the right to
17 raise those objections on appeal of the Court's order.  Martinez v.
18 Ylst, 951 F.2d 1153 (9th Cir. 1991).
19 DATED:   December 30, 2010

                                    _____
                                    Hon. William V. Gallo
                                    U.S. Magistrate Judge